Jonathan Corbett, Esq. (CA Bar No. 325608)
**CORBETT RIGHTS, P.C.**
5551 Hollywood Blvd., Suite 1248
Los Angeles, CA 90028
Phone: (310) 684-3870
FAX:   (310) 675-7080
E-mail: jon@corbettrights.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Daniel Cohen,<br>*Plaintiff,*<br><br>v.<br><br>County of Los Angeles,<br>Deputy Christian Abito,<br>*-and-* Nurse Does 1 – 3,<br>*Defendants* | Case No. 2:25-CV-4372<br><br>**COMPLAINT**<br><br>*JURY TRIAL DEMANDED* |

### Introduction

1. In mid-2024, Plaintiff Daniel Cohen spent 102 days in the custody of the Los Angeles County Sheriff's Department ("LASD").  LASD runs the county jails where those in Los Angeles are held awaiting trial or serving short sentences.

2. Given that those in its jails are only present for short periods of time, LASD has implemented a strategy of attempting to delay medical treatment for its inmates until they leave custody and their medical care becomes someone else's problem – despite the law requiring them to provide prompt and adequate medical care to those in their custody to avoid the infliction of pain and suffering, upon their inmates.

3. Cohen suffers from multiple permanent disabilities and additionally dealt with other ailments requiring medical attention while in LASD custody.

4. True to their strategy, instead of providing even close to minimally-acceptable medical care for Cohen's conditions, treatment was delayed or denied on multiple occasions, incorrect medication was given, and Cohen was retaliated against by LASD staff for requesting medical assistance and complaint forms.

5. Cohen suffered severe and unnecessary pain as a result of LASD's treatment and asks the Court to hold LASD and their staff liable for the injuries caused to him by their violation of his federal constitutional rights.

## JURY DEMAND

6. Plaintiff Cohen demands a trial by jury on all issues so triable.

## PARTIES

7. Plaintiff Cohen is an individual residing in Los Angeles, California.

8. Defendant County of Los Angeles is the political subdivision of the State of California and the entity with legal control of the LASD and its jails.

9. Defendant Deputy Christian Abito is a deputy sheriff of LASD and is the officer who retaliated against Cohen for his medical issues on May 30th, 2024 and is sued here in his individual capacity.

10. Defendant Nurse Doe 1 is an unknown nurse employed by LASD who denied Cohen a complaint form at his medical intake and refused to provide pain medication and is sued here in her individual capacity.

11. Defendant Nurse Doe 2 is an unknown nurse employed by LASD who handed Cohen a medication other than that which he was supposed to receive and is sued here in her individual capacity.

12. Defendant Nurse Doe 3 is an unknown nurse employed by LASD who refused Cohen medication for his skin condition and is sued here in her individual capacity.

13. Plaintiff will seek to learn the true identities of all Doe defendants during discovery and amend his complaint with their names as soon as possible.

## JURISDICTION & VENUE

14. The Court has personal jurisdiction over County of Los Angeles as a municipality within the state in which the Court sits.

15. The Court has personal jurisdiction over Defendants because they work within the State of California, and because this complaint arises as a result of conduct that substantially occurred in the same and was intentionally directed within that forum.

16. This Court has subject matter jurisdiction over the federal claims brought under the Civil Rights Act, 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331.

17. This Court has subject matter jurisdiction over the state-law claims brought herein under the Court's supplemental jurisdiction provided by 28 U.S.C. § 1367.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, upon belief, all defendants reside within the State of California. In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to this claim occurred within the State of California.

## ALLEGATIONS OF FACT

19. On May 13th, 2024, Cohen was arrested at his home in Los Angeles, CA, after a dispute with a neighbor culminated in an accusation that Cohen had threatened the neighbor with a weapon.

20. Cohen was held and arraigned three days later, at which point he was transferred to the custody of the LASD.

21. At all times relevant, Cohen was living with several permanent disabilities, including partial blindness (not correctable with lenses), a skin condition, and PTSD.

22. At the time of his transfer to LASD custody, Cohen was also experiencing pain that a doctor he saw shortly before his arrest believed caused by a gallstone.

23. Cohen was taking strong prescription pain medication prescribed by that doctor for the gallstone pain.

24. As a part of its standard procedure upon the arrival of a new inmate, LASD conducts a medical intake process wherein questions are asked by a medical professional (*e.g.*, a nurse) and paperwork is filled out.

25. Cohen disclosed both the permanent disabilities and his present pain, diagnosis, and medication regimen to Nurse Doe 1.

26. Neither Nurse Doe 1 nor any other LASD's staff did anything to evaluate or treat any of his conditions, and refused to provide any kind of pain (or any other) medication for his gallstone.

27. Cohen asked a deputy overseeing the medical intake for a complaint form to document that his medical needs were not being addressed.

28. The deputy advised Cohen that he would not be allowed a writing implement; thus, Cohen could not complete any forms.

29. As what appeared to be retaliation for daring to ask for medical assistance or complaint forms, Cohen was made to stay at the inmate reception center (where the medical intake unit is located) for a full night and day.

30. Inside of the medical intake unit, there is nowhere to sleep but the floor, the temperature in the room was 62°F or less for a majority of his stay, and blankets or warm clothing was not provided.

31. The room was cold enough that LASD staff were wearing jackets and using space heaters at their desks.

32. Cohen asked for a blanked, and was refused by LASD staff.

33. The cold exacerbated Cohen's untreated gallstone pain.

34. No relevant medical standard of care allows for pain and potential gallstones to be left untreated without reason.

35. No medical reason for this failure was given to Cohen, and upon belief, no medical reason existed.

36. No penological reason existed for keeping Cohen in the cold and making him sleep on the floor with no bedding or warm clothing.

37. On May 17th, he was transferred to a housing unit, without any further medical treatment.

38. On May 21st, 2024, Cohen's experienced a flare up of his permanent skin condition, causing substantial pain.

39. He sought treatment that day for this flare up and the resulting pain, in addition to the pain still caused by his gallstone, by reporting the same to LASD medical staff.

40. He also again requested complaint forms.

41. Effective, cheap, and easily available medication exists for Cohen's skin condition.

42. But, Cohen was not given any medical treatment.

43. And, Cohen was not given any complaint forms.

44. And, Cohen was left to endure untreated pain.

45. By May 25th, 2024 – 9 days after he first reported pain – Cohen was finally allowed to have over-the-counter pain medication provided by Nurse Doe 2.

46. The over-the-counter pain medication only slightly reduced his gallstone pain.

47. However, on one occasion on that date or shortly thereafter, Cohen noticed that the medication given to him was an unfamiliar pill, and that he felt dizzy, nauseous, unable to sleep, and still in pain, after taking them.

48. Upon belief, Nurse Doe 2 either intentionally or negligently provided the wrong medication to Cohen.

49. By May 30th, 2025 – now 9 days after he first reported the flare up – LASD medical staff *still* had not provided medication for his skin condition.

50. Thus, Cohen was still suffering pain due to his skin condition that could have been alleviated had he been given the proper medication.

51. Instead, on that date, LASD sought to transfer him to a different jail.

52. Cohen advised a deputy, Defendant Abito, that he could not stand the journey because of his pain and skin condition.

53. Abito responded by retaliating against Cohen and placed him in disciplinary housing, where he was ultimately left for 20 days.

54. On June 2nd, 2024, while in disciplinary housing, Cohen was showing signs of infection, including sore throat and ear pain.

55. He sought treatment for this new infection, by reporting the same to LASD medical staff.

56. He also again requested complaint forms.

57. The next day, an LASD nurse visited Cohen at his cell and told Cohen that she had determined that Cohen needed to go to a jail urgent care clinic.

58. The nurse also told Cohen that they are not supposed to give out complaint forms according to jail policy, and thus did not give him a complaint form.

59. The nurse's discussion of Cohen's medical conditions was done immediately in front of other inmates, who were able to, and did, hear Cohen's private medical details, causing Cohen additional emotional distress.

60. Cohen would not be taken to an urgent care clinic until June 6th, 2024 – *four days later*.

61. At the clinic, Cohen was diagnosed with an infection and treated with a bacterial infection, in or around his throat and ears, which required antibiotics.

62. This infection is considered a medical emergency requiring urgent attention.

63. Cohen also asked Defendant Nurse Doe 3, a member of the clinic staff, for medication for his skin condition.

64. Cohen was given antibiotics but Nurse Doe 3 refused medication for his skin condition once again.

65. Cohen spent the next 10 weeks in pain from his presumed gallstone and skin condition.

66. On an August 1st, 2024 visit to an LASD medical unit, a doctor had directed an ultrasound to determine whether Cohen indeed had a gallstone.

67. The ultrasound was performed approximately 2 weeks later – nearly 3 months after he first reported the pain that was already identified as a likely gallstone by another doctor.

68. On or about August 23rd, 2024, Cohen was advised that the ultrasound showed a gallstone.

69. Cohen was released from custody on August 26th, 2024, after a judge sentenced him to probation and time served.

70. During the entirety of his confinement, Cohen never received *any* medical treatment for his presumed gallstone and his skin condition, other than over-the-counter pain medicine and an ultrasound performed too late to provide any actual treatment to fix the issue.

71. LASD's failure to diagnose and treat the gallstone caused Cohen additional, severe, and unnecessary pain.

72. The failure of LASD staff to reject Cohen's reasonable medical requests were not merely the result of individual misconduct, but a result of a pattern or practice of LASD.

73. In particular, LASD maintains a pattern or practice of postponing medical treatment to its inmates because those in county jail, unlike those in prison, are only in jail custody for short periods of time. Thus, LASD tries to "wait out the clock" such that the medical problem goes elsewhere – whether it be the streets, a prison, or anywhere but their doorstep.

74. This pattern or practice can be seen clearly in this case, where Cohen requests medical care numerous times, from numerous officials, and is uniformly rejected each time (and even explicitly told policy was not to provide complaint forms); these employees are doing as they are told by those in charge of LASD's jails, not as they believe good medical practices require.

75. Cohen filed a tort claim notice with the County of Los Angeles on or about October 27th, 2024; all administrative remedies have been extinguished and all conditions precedent to his state law claims have been satisfied.

## CLAIMS FOR RELIEF
## Counts 1 & 2 – Civil Rights Act (42 U.S.C. § 1983)
### *Failure to Treat Medical Needs (Gallstone)*

76. Cohen had a serious medical need – in particular, stones in his gallbladder.

77. LASD has a duty to provide adequate medical care to those in its custody.

78. This medical need went severely undertreated (no treatment other than occasional and delayed over-the-counter pain medication), without medical justification, and *contra* to the applicable medical standards of care.

79. As such, Nurse Doe 1, who was the first of many who failed Cohen in this regard by failing to treat his pain or refer him for testing or other medical review, violated Cohen's Eighth Amendment rights under the U.S. Constitution.

80. Cohen suffered severe and unnecessary pain as a result of this violation of his rights that he would not have suffered but for the violation.

81. Nurse Doe 1's disregard for Cohen's right to adequate medical care was the proximate cause of Cohen's pain.

82. Nurse Doe 1 is therefore liable to Cohen under the Civil Rights Act (**Count 1**).

83. LASD maintains a pattern or practice of delaying treatment for those in its jails in the hopes that the treatment can be postponed until the inmate is no longer in their custody and no longer their financial responsibility.

84. This pattern or practice is why their medical staff treated Cohen without regard to his rights and caused the injuries complained of.

85. County of Los Angeles is therefore vicariously liable for the injury caused by Nurse Doe 1 (**Count 2**).

**Count 3 & 4 – Civil Rights Act (42 U.S.C. § 1983)**

*Failure to Treat Medical Needs (Skin Condition)*

86. Cohen had another serious medical need – in particular, a painful skin condition.

87. LASD has a duty to provide adequate medical care to those in its custody.

88. This medical need went entirely untreated, despite readily available treatment, without medical justification, and *contra* to the applicable medical standards of care.

89. As such, Nurse Doe 3, who was one of many who failed Cohen in this regard, violated Cohen's Eighth Amendment rights under the U.S. Constitution.

90. Cohen suffered severe and unnecessary pain as a result of this violation of his rights that he would not have suffered but for the violation.

91. Nurse Doe 3's disregard for Cohen's right to adequate medical care was the proximate cause of Cohen's pain.

92. Nurse Doe 3 is therefore liable to Cohen under the Civil Rights Act (**Count 3**).

93. LASD maintains a pattern or practice of delaying treatment for those in its jails in the hopes that the treatment can be postponed until the inmate is no longer in their custody and no longer their financial responsibility.

94. This pattern or practice is why their medical staff treated Cohen without regard to his rights and caused the injuries complained of.

95. County of Los Angeles is therefore vicariously liable for the injury caused by Nurse Doe 3 (**Count 4**).

**Count 5 – Civil Rights Act (42 U.S.C. § 1983)**

*Failure to Treat Medical Needs (Infection)*

96. Cohen had another serious medical need – in particular, an infection in or around his throat and ears.

97. LASD has a duty to provide adequate medical care to those in its custody.

98. This medical need went untreated for four days, despite such bacterial infection being considered a medical emergency (as even the nurse who visited him appeared to recognize), without medical justification, and *contra* to the applicable medical standards of care.

99. LASD failed to have the proper procedures in place to ensure that when a nurse determines that a patient has an urgent need to see a doctor, that the patient actually sees a doctor.

100. LASD further maintains a pattern or practice of delaying treatment for those in its jails in the hopes that the treatment can be postponed until the inmate is no longer in their custody and no longer their financial responsibility.

101. Their failure to have those proper procedures is a part of their pattern or practice to deny treatment and caused the injuries complained of.

102. County of Los Angeles is therefore vicariously liable for the injury caused by the failure to get him to urgent care (**Count 5**).

### Count 6 – Civil Rights Act (42 U.S.C. § 1983)
*Dispensing Incorrect Medication*

103. While supposedly giving Cohen medication for his pain, Nurse Doe 2 gave Cohen a substance that was not a pain medication.

104. This substance caused him adverse symptoms, including dizziness, and to feel additional pain due to not receiving his pain medication.

105. The standard of care for medical professionals dispensing medication requires them to use reasonable care that they dispense the right medication to the right person.

106. Nurse Doe 2 breached this duty by failing to exercise this care and giving Cohen the wrong medication.

107. As such, Nurse Doe 2 violated Cohen's Eighth Amendment rights under the U.S. Constitution.

108. Cohen suffered illness and additional pain as a result of this violation of his rights that he would not have suffered but for the violation.

109. Nurse Doe 2's disregard for Cohen's right to adequate medical care was the proximate cause of Cohen's pain.

110. Nurse Doe 2 is therefore liable to Cohen under the Civil Rights Act (**Count 6**).

### Count 7 – Civil Rights Act (42 U.S.C. § 1983)
### *Inadequate Conditions - Temperature / Bedding*

111. LASD has a duty to ensure that their facilities are reasonably safe for those forced to live in them.

112. By maintaining a medical intake unit, where inmates are sometimes held for a day at a time, at unsafe temperatures, without blankets, warm clothes, or even bedding of any kind, LASD has failed to meet this minimum standard.

113. As such, LASD has violated Cohen's Eighth Amendment rights under the U.S. Constitution.

114. Cohen suffered pain and discomfort as a result of this violation that he would not have suffered but for the violation.

115. County of Los Angeles is therefore liable to Cohen under the Civil Rights Act (**Count 7**).

### Counts 8 & 9 – Civil Rights Act (42 U.S.C. § 1983)
### *Retaliation for Request for Medical Attention*

116. A jailer may not retaliate against an inmate who needs assistance due to a medical condition or wishes to file a medical grievance.

117. Deputy Christian Abito retaliated against Cohen when he was in severe pain and urgently needed a doctor for being unable to comply with his orders without

experiencing additional pain and suffering by putting Cohen in disciplinary housing for 20 days.

118. As such, Abito has violated Cohen's Eighth Amendment rights under the U.S. Constitution.

119. Cohen suffered additional pain and loss of the ability to be treated with the privileges of an ordinary inmate (as little as those may be) as a result of Abito's retaliation.

120. Abito is therefore liable to Cohen under the Civil Rights Act (**Count 8**).

121. LASD maintains a pattern or practice of delaying treatment for those in its jails in the hopes that the treatment can be postponed until the inmate is no longer in their custody and no longer their financial responsibility.

122. This pattern or practice is why their deputies treated Cohen without regard to his rights and caused the injuries complained of.

123. County of Los Angeles is therefore vicariously liable for the injury caused by Abito (**Count 9**).

### Counts 10 – 13 – Professional Negligence
*Medical Malpractice / Vicarious Liability*

124. Plaintiff repeats and re-alleges the allegations under Counts 1, 3, 5, and 6.

125. These allegations also constitute professional negligence (medical malpractice) under California state law.

126. County of Los Angeles is liable for the torts of their employees committed in the course of their job duties under the doctrine of *respondeat superior*.

127. All individuals mentioned in this complaint, save for Cohen, were employees of the County of Los Angeles working in the course of their job duties.

128. County of Los Angeles is therefore liable for professional negligence for: failing to treat his kidney and gallstones (**Count 10**), failing to treat his skin

condition (**Count 11**), failing to treat his infection (**Count 12**), and dispensing incorrect medication (**Count 13**).

### **Count 14 – Gross Negligence**
### *Inadequate Conditions - Temperature / Bedding*

129. Plaintiff repeats and re-alleges the allegations under Count 8.

130. These allegations also constitute gross negligence under California state law.

131. County of Los Angeles is liable for the torts of their employees committed in the course of their job duties under the doctrine of *respondeat superior*.

132. All individuals mentioned in this complaint, save for Cohen, were employees of the County of Los Angeles working in the course of their job duties.

133. County of Los Angeles is therefore liable for the inadequate conditions in the medical intake center (**Count 14**).

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays that the Court order the following relief:

i. Actual damages, jointly and severally against all defendants, for pain and suffering in the amount of $1,000,000;

ii. Punitive damages, jointly and severally against all defendants, in the amount of $1,000,000;

iii. Reasonable attorney's fees;

iv. Cost of the action;

v. Pre- and post-judgment Interest as allowed by law; and

vi. Any such further relief as the Court deems proper.

Dated:   Los Angeles, CA        Respectfully submitted,
         May 14th, 2025

                                                        _____*/s/Jonathan Corbett*_____
                                          Jonathan Corbett, Esq. *(CA Bar 325608)*
                                          **CORBETT RIGHTS, P.C.**
                                          5551 Hollywood Blvd., Suite 1248
                                          Los Angeles, CA 90028
                                          Phone: (310) 684-3870
                                          FAX:   (310) 675-7080
                                          E-mail: jon@corbettrights.com
                                          *Attorney for Plaintiff*